KING, J.
(orally.)
The plaintiff brought his action to recover damages for an injury he sustained from falling off a handcar and having his leg broken, either by reason of falling from the handcar and striking upon the ground, or because after falling, a handcar following the one he was riding upon ran over his leg.
The allegations of negligence in the petition are that a gang,of men who were working upon a section near Bay Bridge, were returning home and were in charge of one McCann, foreman ; that the foreman *654 failed to require or have the handcars, of which there were three, run in accordance with the rules of the company, which were to the effect that they should, when following each other, not run closer than 300 feet; that McCann was also negligent in riding upon the forward one of the three oars rather than upon the middle one, and that they were negligent in not having proper lights.
All of these allegations of negligence, however, amount to only one ground of negligence, to-wit: The negligence of the defendant as represented by its foreman in charge of this work and of this gang of men, in not requiring that the handcars be kept a proper distance ■apart.
On the occasion in question they were following each other and were loaded with five to seven men each. When they had traveled some three or four miles from the place they started in the direction of Sandusky, one of the men upon the forward car fell off. The forward car ran over him, was thrown from the rails and ran some little distance off the track. The second car was following and ran over this man, and also was thrown off the rails and ran off the track for a short distance. By the force of that collision and by reason of the car going from the rails, the plaintiff below was thrown from the second car upon which he was riding to the ground, either between the rails of the track upon which they were riding, or between the tracks at that point. A third car was following closely,and it seems to have run over the person who fell off the first car, and was also thrown from the rails and ran a short'distance.
I think the evidence probably shows these faots without very much dispute. It is disputed whether the plaintiff below was run overby the third car or not, and it is claimed that a contributing cause of his injury was the negligence of the company in allowing the cars to run too closely together, or, as alleged in the petition and as claimd upon the trial, in allowing them to disobey the rules of the company that they should run 300 feet apart. In other words, that if they had been 300 feet apart, the men upon the second car upon which the plaintiff was riding would have had an opportunity to observe the obstruction on the track and stop the car before it had reached it, and thus the accident would not have happened.
So far, of course, as the allegations in the petition and the proof is concerned, as to McCann riding upon the first car rather than the second, that amounts to nothing, except that it is argued that if he had been upon the second car,he might have prevented the running in the manner in which they did run, but that all relates to the method in which the cars were being run at the time, so that the kind of negligence is that the cars were running too closely together. No negligence is alleged nor shown in the company as to causing the man on the first car to fall from it. So far as the evidence in the case discloses, that was a pure accident, and it was generally treated so on the trial. No claim is made in the petition, nor I think, by the plaintiff in making out his case, that the man on the front car fell off because of any particular act of negligence on the part of the defendant. How he fell is not very clearly disclosed, only the fact that he fell off,and he fell off the front end of the car, and the car ran over him and it was thrown from the track.
Now this case was tried in the court of common pleas one time, and a verdict rendered for Litz,and brought to the circuit court and there reversed,* and returned to the common pleas, and perhaps, *655 tried twice, one time the jury disagreeing, and finally a second verdict was rendered in favor of Litz, and a judgment rendered upon it; and it is that judgment this petition'in error seeks to reverse."
We have read the testimony, all of it that bears upon the questions that have been made by the bill of exceptions in that case, both as to the weight of the evidence andas to the particular errors assigned.
We do not find any error in the admission of testimony, and I need not spend any time in discussing any questions that were raised here in the argument.
Some point was made that the court, after the argument of the case had been begun, interrupted counsel and made a statement to them with reference to the consideration which they should give to a photograph of a handcar. We do not find any error in that. It is nothing but what the court might have said — might have said in its general charge if it saw fit to say it, or at the time when it was undoubtedly alluded to by counsel in argument.
There are, however, a great many exceptions to the charge of the court and to tne refusal of the court to give certain requests which were asked in writing to be given and submitted to the jury before argument and after the evidence had been concluded. One of the objections to the charge of the court, and which has been argued here with considerable force, is found on page 423 of the bill of exceptions, and I desire to notice that. The court in speaking of the duty of the railroad company in its general charge said: “The railroad company is only required to use ordinary care and exercise ordinary precaution and prudence and employ and adopt ordinary agencies and means to prevent injuries to its employes. It is bound to adopt such regulations or provisions for the safety of its employes as will afford them reasonable protection against the dangers incident to the performance of their respective duties, and it is bound to use ordinary care and diligence to secure obedience to such regulations on the part of its employes.” *
It is very strenuously objected here that the use of the phrase “secure obedience” is putting a rule and obligation on the company stronger that it ought to be. If understood by the jury with reference to the facts of the case, we are not prepared to hold now that that expression would be in this case erroneous. The supreme court have incidentally referred to that question, and it may be found referred to in a case that went to the supreme court from a decision of the circuit court in Lucas county, (Pennsylvania Co. v. Fox, 10 Ohio Circuit Court Reports, 72), and the decision of the circuit court was reversed. The case was again sent back for trial, and after its second trial it came again before the circuit court. The court in this case say:
“In his petition against the company, Pox charged that the company was negligent in the person of the yardmaster, in not performing his duty and following a long observed custom known to P’ox, and upon which he relied, of having on the front of cars moving about the yard, as these empty passenger cars were, a brakeman to stop them and warn persons to get out of the way. Though no brakeman was on the front of the cars on this occasion, the evidence showed that the yardmaster had assigned a sufficient number of competent men to move and switch the empty cars, and did not know that they were not doing their duty. The company denied that it or the yardmaster was negligent, charged that Pox himself was guilty of negligence in standing where he did, or not keeping constant watch for his safety. On the first trial of the case a ver *656 diet and judgment were rendered for Fox, which the circuit court, by a majority opinion, affirmed. These judgments were afterwards reversed by the Supreme Court, on the ground that the court of common pleas refused to charge the jury as requested in the 8th request of the Pennsylvania Company.
“This request is in substance as follows: ‘That if the yardmaster assigned a sufficient number of competent men todo said switching, he was not bound to go with them to see that they did their duty, and was not negligent in omitting to do so. The supreme court having reversed the judgment, with the full record before it, settles tne law of the case that the yardmaster is not negligent if he assigns a sufficient number of competent men to do the work, though he does not go with them to see that they perform their duties. The evidence not showing that the yaidmaster knew that these men would not do, or were not doiDg their duty, the necessary implication from the decision of the supreme court in the case reverses the judgment of the court of common pleas and sets aside the verdict.”
It will be seen that in that case the yardmaster had assigned a sufficient number of men to do a duty which was assigned to them to do, and it was held that it was not necessary for him to go with them to see that they did their duty, he not knowing that they were disobeying any rules or failing to perform their duty properly; but in the case before us, of course, the foreman in charge of the gang was with the men, and if there was any violation of duty on their part in running these cars, it is presumed, and the testimony in the case shows, that he knew of that violation of duty. It is undisputed in the case, in fact the foreman testifies to it, that these cars were running quite close together, so close, some of the witnesses say, that they bumped together. The foreman says he did not notice that, but that they were very near together, and were very near together running over several miles of the track; so that as applied to the facts in this case, we are not prepared to say that it would be erroneous to say that he should use ordinary care and diligence to secure obedience to the rules and- regulations of the company on the part of the employes that were under him. lhat only requires him to do what any man in like position is always required to do having charge of men and directing them about their work.
If he observes that they are doing it negligently, it is his duty to caution them in that respect — not require them or compel them to observe the rules and observe care, but to use ordinary care to secure that result, and then,if the men obstinately violate his instructions in that respect, of course, the company would not be liable.
In connection with the charge, as 1 have said, the court was requested to give a large number of written requests before argument. We have examined all those and are not prepared to hold the court was required to give those requests in the form in which they were prepared. Some of them may have been proper if even a word had been changed, but in the form in which they were drawn we think the court was justified in the refusal of those requests, excepting the 27th, and we are unable to see any reason why that should not have been given. We find nothing in the general charge that would have the effect to justify the refusal of that point, if the general charge could have cured the error of refusing to give this.
This request is as follows:
“If the jury find that the foreman, McCann, was negligent on the *657 occasion in question, in allowing the handcars to run too near together, and that the plaintifl knew, or toy the exercise of ordinary care might have known how near together the cars were running, it was his duty thereafter to act with reference to such negligence of the foreman, and. exsrcise care with reference to it, to avoid injury to himself, ”
That, we think, is a universal rule in a case of this kind, and that when asked the court should have given a request like that.
Now, on an examination of the evidence of this case, which I will refer to before I come back to this charge again, we would not disturb this verdict on the ground that the evidence does not show negligence on the part of the defendant company. The evidence shows, as I have already said, that this foreman, the representative of the company at this time and place, was with these men and in charge of them and returning home. It shows according to his own testimony that he knew of the continued violation of the rule of the company, and that he knew that these cars were running at a very close distance apart, not more than a few feet apart, he says, and the evidence is overwhelming on the part of all the witnesses who testify on this subject that all the three cars were close together, so close that if an accident happened to any of the cars in the line by which it was disabled or anything might be thrown from it to the track, that the ears following it could not have stopped before they were run against or over the obstruction. We think the evidence sustains the claim also that the fellow servants of tne plaintiff were negligent in their operation of these handcars, and that the claim made here by the plaintifl in error is not sustained by the law, if the negligence of the fellow servants concurs with the negligence of the principal in producing an injury, that the defendant would not be liable if the plaintifl himself was free from negligence contributing to produce the injury. The railway company in this case is responsible for the negligence of the foreman, and this rule is well settled by Railway Co. v. Lewis, 32 Ohio St., 196; Berea Stone Co. v. Kraft, 31 Ohio St., 287; Railway Compan v. Ranney, 37 Ohio St., 665. It is also an equally well settled principle of law that where the negligence of the principal and of a fellow servant concurrently produced an injury to an employe who is himself without negligence, that such injured employe may recover. Bailey’s Master and Servant, p. 439; 37 Ohio St., 549; 45 Ohio St., 11. We think that principle is well settled both in the general law of negligence and in this state, but these observations will not, in our judgment, dispose of the questions that are raised here.
Ihe court was asked to give before argument a request numered 18, which it gave :
“If the plaintiff was pumping the motor upon the second car, and so aiding in running it too near the first car, and so running it too near the first car was negligence on his part, and such negligence resulted directly in the plaintiff’s injury in whole or in part, he was himself guilty of contributory negligence, and the verdict should be for the defendant.”
It will be observed that that request alludes to the plaintifl as pumping the handcar. In his general charge the court gave this:
“But the mere fact that he was riding upon a car which was run and managed in a negligent manner in violation of the rules of the company would not be sufficient to charge him with contributory negligence in the absence of proof that he assented to or took some *658 part in such negligent acts or violation of the company’s rules.”
That clause which I have read is specially excepted to. If that were to be understood by the jury as meaning that if the plaintiff himself had exercised ordinary care and was not a party to the contributory negligence of his fellow employes, that he might then recover, it would be correct; but if it was understood and taken in connection with request No. 18, it might well be understood that the fact that the plaintiff was not pumping would relieve him from any responsibility of the running of that car, and that he would not himself be negligent if his fellow employes were actually moving the car and he standing up doing nothing, it would be erroneous in our judgment.
An employe is bound to exercise ordinary care to ascertain and to observe the rules of his employer, and it will not excuse him for a violation that the employer or his agent superior to the plaintiff has at some time disobeyed such rules. ‘‘If an employe has suffered an injury brought about by violation of the plain instructions of his principal, he cannot hold his principal liable therefor.” 33 Ohio St., 227. ‘‘If an employe with knowledge of the habitual and continued negligence of his superior fellow employe in some matter acquiesces therein and continues in the service of his employer without objection or effort towards correction of such neglect, he thereby waives his right against the company and takes the rieu upon himself.” 33 Ohio St., 468. We think the evidence in this case fairly shows that the defendant in error knew the rules of the company. It is true he testifies he did not know them and had not been informed of them, but other witnesses testify that he was informed, and nearly all the witnesses in the case, who were like himself section hands, testify to a knowledge of this rule relating to the distance which handcars should be kept apart; but if the rule was unknown to the plaintiff, the duty still remained that those propelling the handcar should observe ordinary care in the conduct of that-work to avoid injuring others or themselves.
The evidence does not perhaps agree as to whether the plaintiff was pumping or not, but we think a fair preponderance of it is to the effect that he was not pumping, and we think that the evidence discloses simply this state of facts: Here were eighteen or twenty men that divided themselves into three parties and mounted three handcars for the purpose of returning home. Their duty on the handcar was to propel this handcar themselves and whatever freight they might have along in the way of tools or otherwise, to propel it safely if possible to the place of destination, and that duty, in the manner in which those men were conducting this work,devolved equally upon all the men. That four men on the hahdcar should assume the burden of propelling it and plaintiff stand idly by, would not relieve him from the same responsibility which rested upon the others to observe care in propelling that handcar. Again, another duty devolved upon those men. Besides the mere act of propelling the car, they were to watch out for obstructions upon the track, for trains or other cars that were ahead. The plaintiff upon the second car knew there was a handcar ahead of him, and while he testifies that he did not see the handcar which everybopy else on both cars say was near to the second car all the way, it was his duty to have looked, and his position upon the handcar was such as to give him special opportunity to perform that duty, to-wit, to engage in the business of watching out, .which he could do better than the men who were pumping; so that all *659 these duties devolved equally upon all the men upon that handcar. This man was not a passenger, he was not a man that was being accommodated with a ride; he was there as every other man on that car was, to get it home and get it safely home, and the duty devolved upon him to look out, to assist his fellow workmen if necessary, or,if they relieved him of that duty, to perform the other duty of watching out so that all of them might safely be returned to their destination. We think by the charge of the court the jury were given to understand that it he stood by, the jury might find him not guilty of negligence, while it might find his co-employes guilty of .negligence who were actually pumping the car, and for these reasons we think the charge in the part which I have referred to was misleading. But, while the jury found in this case for the plaintiff, they passed upon this exact question,and while it was not specially referred to in argument, we think the jury found for the defendant, and in such a manner that we shall dispose of this case on this ground solely for the purpose of enabling the defendant in error to take an advantage of this decision which he could not perhaps otherwise take, by testing its correctness in the higher court.
Hon. C. P. Wickham, and George E. Reiter, Attorneys for Plaintiff in Error.
R. B. Fisher, Phinney & Merrill, and Theodore Alvord, Attorneys for Defendant in Error.
Question No. 8 was propounded to the jury in connection with the general verdict, and is as follows:
“Did the men upon the second car fail to exercise ordinary care in running their car too near the first car?”
Answer: “Yes, and without reproof by the foreman.”
Question No. 9: “Did the men upon the third car fail to exercise ordinary care in running the car too near the second car?”
Answer: “Yes, and without reproof by the foreman.”
The addition of the words “without reproof by the foreman, ”is a matter of no consequence. As we have already said, the evidence, we think, would fairly support a verdict finding that he was guilty of negligence but the jury have said that the men (with the plaintiff) upon the second car failed to exercise ordinary care in running their car too near the first car. If that was so, the judgment in this case ought to have been for the defendant below and in favor of the plaintiff in error, since the special findings of fact must control the general verdict, and the finding that the men upon the second car failed to exercise ordinary care is equivalent to finding that the plaintiff is guilty of negligence contributing to bis injury, in our judgment; and we hold that for that reason the judgment in this case roust be reversed, and that, as the court of common pleas should have rendered a judgment in this case upon that special verdict of the jury for the defendant below, this court will proceed to render the judgment which the court of common pleas ought to have rendered, a judgment for, the plaintiff in error and against the defendant in error. ,
Defendant in error excepts.

See opinion of Circuit Court at first trial, apte, page 646.